UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| SELENA RANDOLPH, | ) |
|                 Plaintiff, | ) |
| v. | ) No. |
| ARLENE H. SHERIFF, personal representative of the Estate of Andrew M. Sheriff, | ) |
|                 Defendant. | ) |

## COMPLAINT

Plaintiff Selena Randolph, by her undersigned counsel, states the following as her Complaint against Defendant Arlene H. Sheriff, personal representative of the Estate of Andrew M. Sheriff (the "Estate"):

### Summary of the Action

1. This case arises from contracts granting Ms. Randolph a leasehold interest and the option to purchase properties located at 2 Oak Ridge Road, Sanford, Maine, and 12 Front Street, East Rochester, New Hampshire (collectively, "the Option Contracts"). Both properties are currently owned by the Estate. Under the terms of the Option Contracts, the rent paid by Ms. Randolph pays the mortgages and contributes to the purchase of the properties. Ms. Randolph is also responsible for paying taxes and insurance on both properties. Ms. Randolph currently lives in the Sanford property and intends to exercise her option to purchase both properties. The Option Contracts are binding on Defendant Sheriff as the personal representative of the Estate.

2. After Andrew Sheriff's death, Defendant Sheriff repudiated the Option Contracts on behalf of the Estate and asserted that the contracts are void, thus preventing Ms. Randolph from exercising the purchase options.

3.     Ms. Randolph respectfully requests that the Court enter judgment (i) declaring that the Option Contracts are valid; (ii) declaring that Defendant Sheriff breached the Option Contracts through anticipatory repudiation; (iii) compelling Defendant Sheriff to comply with all contractual obligations in the Option Contracts; and (iv) awarding attorney fees to Ms. Randolph as provided in the Option Contracts.

## Jurisdiction and Venue

4.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because there is diversity of citizenship among the parties and the amount in controversy exceeds $75,000.

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the property that is the subject of this action is situated in Maine. The Option Contracts provide that the purchase price of 2 Oak Ridge Road, Sanford, Maine (the "Sanford Property") is $306,000.00, a higher value than the $265,000.00 purchase price for 12 Front Street, East Rochester, New Hampshire (the "Rochester Property").

## The Parties

6.     Plaintiff Selena Randolph is a resident of Maine and a party to the Option Contracts. Ms. Randolph resides at 2 Oak Ridge Road in Sanford.

7.     Defendant Arlene H. Sheriff, is the personal representative of the Estate of Andrew M. Sheriff. Mr. Andrew M. Sheriff, a resident of New Hampshire, owned the Sanford Property and the Rochester Property, and executed the Option Contracts with Ms. Randolph.

8.     The Option Contracts extend to and are binding upon Defendant as the personal representative of the Sheriff Estate. Defendant Sheriff is a resident of Portsmouth, New Hampshire. Acting through counsel located in Maine, Defendant Sheriff sought to evict Ms.

Randolph from the Sanford Property and the Rochester Property by service of process in Maine and repudiated the obligations of the Option Contracts.

**Facts Common to All Counts**

9.     Ms. Randolph previously served as the Office Administrator, Operations Director, and Nutritional Coach at the New Hampshire Chiropractic Clinic ("NHCC"), the trade name for Mr. Sheriff.  Ms. Randolph also operated a wellness and supplement business, Absolut Residential Care LLC.

10.     In 2021, Mr. Sheriff and Ms. Randolph established Absolut Ross Corner LLC and Absolut Residential Care LLC, respectively, for the principal purpose of engaging in real estate rentals.  Absolut Ross Corner LLC and Absolut Residential Care LLC both listed absolutrosscorner@gmail.com as the business email address registered with the State of New Hampshire.  Ms. Randolph served as the registered agent for Absolut Residential Care LLC, and Mr. Sheriff served as the registered agent for Absolut Ross Corner LLC.

11.     NHCC and Absolut Ross Corner LLC executed a joint venture agreement with the purpose to own, acquire, develop, manage, and operate residential and commercial real estate projects, affordable housing developments, business expansion, and all related clinic, administrative, financial, and operational activities necessary for these ventures.  Each party to the agreement contributed $500,000, with the understanding that all business funds were pooled for use in the joint venture.

12.     The joint venture agreement provided that upon the death of either partner, the surviving partner shall retain full management and operational control over properties held by the joint venture.

13. The joint venture agreement is governed jointly by the laws of the State of New Hampshire and the State of Maine, with matters concerning clinic and business operations governed by New Hampshire law and matters concerning real estate and property rights governed by Maine law.

### The Sanford Option Contract

14. Ms. Randolph and Mr. Sheriff entered into real estate agreements and transactions as part of their broader business relationship. In September 2022, Mr. Sheriff purchased 2 Oak Ridge Road in Sanford, Maine. On September 20, 2022, Mr. Sheriff and Ms. Randolph entered into a lease agreement and option contract for the Sanford Property (the "Sanford Option Contract"), attached as Exhibit A. Pursuant to the Sanford Option Contract, Mr. Sheriff agreed to lease the Sanford Property to Ms. Randolph, commencing on September 30, 2022, and continuing on a month-to-month basis with a monthly rent of $2,000 per month.

15. The parties agreed that Ms. Randolph's rental payments would pay for the mortgage and "contribute to the purchase of this property." Ex. A at ¶ 27. Ms. Randolph was "also responsible for taxes and insurance." *Id.* Mr. Sheriff directed Ms. Randolph to pay the mortgages, taxes and insurance for the Sanford Property in lieu of traditional rent payments made directly to him.

16. So long as Ms. Randolph is not in default in the performance of the contract terms, the Sanford Option Contract provides her the "the option to purchase . . . the Property for $306,000.00 (the 'Purchase Price')." Ex. A at ¶ 39. The option expires at midnight on September 30, 2029. *Id.* at ¶ 40. If Ms. Randolph does not exercise the option by that deadline, "all rents and other charges paid under this Lease will be retained by the Landlord." *Id.* However, if Ms. Randolph exercises the option to purchase the Sanford Property for the purchase price, her rental

payments "all contribute to the purchase of this property." Ex. A at ¶¶ 27, 39. Advance rental payments or considerations involving future lease credits will be credited to her. Ex. B at ¶¶ 44(c).

17. If Ms. Randolph exercises the option, the Sanford Option Contract provides a list of procedures governing the purchase of the Sanford Property:

   a. Within 15 days after Ms. Randolph exercises the option, the contract provides that Mr. Sheriff will provide seller disclosures regarding property condition, title insurance, and other conditions relating to environmental problems or building or zoning code violations. Ex. A at ¶ 44(e).

   b. After receiving the seller disclosures, Ms. Randolph has 15 days to examine the title and report, in writing, any valid objections. If Ms. Randolph objects to any exceptions to the title, Mr. Sheriff must use "all due diligence to remove such exceptions at [his] expense within 60 days." Ex. A at ¶ 44(f).

   c. If the exceptions cannot be removed within 60 days, Ms. Randolph has the option to terminate the rights and obligations under the option. *Id.*

   d. Alternatively, Ms. Randolph may elect to purchase the Property subject to such exceptions. *Id.*

18. The contract terms are binding on Defendant Sheriff, as the personal representative of the Estate. The terms "will extend to and be binding upon and inure to the benefit of the respective heirs, executors, administrators, successors and assigns, as the case may be, of each Party." Ex. A at ¶ 47.

19. If the option is exercised and the closing of the purchase is completed, all rights and obligations of the parties as landlord and tenant are extinguished, with the possessory interests of the tenancy converting into a possessory ownership interest. Thus, after closing of the purchase,

"all rights and obligations under the Lease (other than the Option) will cease to exist and the Parties will have no further rights or claims each other concerning the Lease." Ex. B at ¶ 44(g).

20. The agreement was signed by Mr. Sheriff and Ms. Randolph on September 20, 2022.

21. After executing the Sanford Option Contract Ms. Randolph complied with the terms of the contract and with the course of dealing established between Mr. Sheriff and Ms. Randolph. In reliance on the Sanford Option Contract, Ms. Randolph made additional payments contributing to her planned purchase of the property. Ms. Randolph currently lives in the Sanford Property and intends to exercise her option to purchase the property.

## The Rochester Option Contract

22. Mr. Sheriff purchased the property at 12 Front Street, Rochester, New Hampshire (the "Rochester Property") in October 2022. On December 31, 2022, Mr. Sheriff and Ms. Randolph entered into a lease agreement and option contract for the Rochester Property (the "Rochester Option Contract"), attached as Exhibit B. Pursuant to the Rochester Option Contract, Mr. Sheriff agreed to lease the Rochester Property to Ms. Randolph commencing on January 1, 2023, continuing on a month-to-month basis with a monthly rent of $1,500 per month. Like the Sanford Option Contract, the parties agreed that Ms. Randolph's rental payments would pay for the mortgage and "contribute to the purchase of this property." Ex. B at ¶ 27. Ms. Randolph was "also responsible for taxes and insurance" for the Rochester Property. *Id.* Mr. Sheriff directed Ms. Randolph to pay the mortgages, taxes and insurance for the Rochester Property in lieu of traditional rent payments made directly to him.

23. So long as Ms. Randolph is not in default in the performance of the contract terms, the Rochester Option Contract provides her the "the option to purchase . . . the Property for

$265,000.00 (the 'Purchase Price')." Ex. B at ¶ 39. The option expires at midnight on December 31, 2026. *Id.* at ¶ 40. If Ms. Randolph does not exercise the option by that deadline, "all rents and other charges paid under this Lease will be retained by the Landlord." *Id.* If Ms. Randolph exercises the option to purchase the Rochester property for the purchase price, her rental payments "all contribute to the purchase of this property." Ex. B at ¶¶ 27, 39. Advance rental payments or considerations involving future lease credits will be credited to her. Ex. B at ¶¶ 44(c).

24. The remaining terms of the option match the Sanford Option Contract, including Mr. Sheriff's obligation to provide seller disclosures and the opportunity to raise objections regarding any exceptions to title. Ex. B at ¶ 44.

25. If the option is exercised and the closing of the purchase is completed, all rights and obligations of the parties as landlord and tenant are extinguished, with the possessory interests of the tenancy converting into a possessory ownership interest. After closing of the purchase, "all rights and obligations under the Lease (other than the Option) will cease to exist and the Parties will have no further rights or claims each other concerning the Lease." Ex. B at ¶ 44(g).

26. The Rochester Option Contract was signed by Mr. Sheriff and Ms. Randolph on December 31, 2022.

27. The contract terms are binding on Defendant Sheriff, as the personal representative of the Estate. The terms "will extend to and be binding upon and inure to the benefit of the respective heirs, executors, administrators, successors and assigns, as the case may be, of each Party." Ex. B at ¶ 47.

28. The Rochester Option Contract provides that Ms. Randolph will not sublet the property "[w]ithout the prior, express, and written consent" of Mr. Sheriff. Ex. B at ¶ 26. On July 1, 2023, Mr. Sheriff granted Ms. Randolph and Absolut Residential Care LLC (for which Ms.

Randolph is the registered agent) "full authority" to act on Mr. Sheriff's behalf in managing the Rochester Property. Ex. C at 1. Ms. Randolph previously rented the Rochester Property to a third party, with the tenancy administered by Absolut Residential Care.

29. After executing Rochester Option Contract, Ms. Randolph complied with the contract terms and with the course of dealing established between Mr. Sheriff and Ms. Randolph. Ms. Randolph intends to exercise her option to purchase the property.

30. In reliance on the Rochester Option Contract, Ms. Randolph made additional payments beyond the monthly payment of $1,500, all contributing to her planned purchase of the property. The mortgage for the Rochester Property has been paid in full and all payments were made by Ms. Randolph.

### Anticipatory Repudiation of the Option Contracts

31. After the death of Mr. Sheriff in September 2025, his wife, Defendant Arlene Sheriff, was appointed as the personal representative of his estate.

32. Without engaging in any legal process, Defendant Sheriff then changed the locks on the Rochester Property. Pursuant to the Rochester Option Contract, "[l]ocks may not be added or changed without the prior written agreement of both Parties, or unless the changes are made in compliance with [applicable legislation of the State of New Hampshire]." Ex. B at ¶ 50. Defendant Sheriff later provided a copy of the new key to Ms. Randolph.

33. Defendant Sheriff then provided Ms. Randolph with a 30-day notice to terminate her tenancy in the Sanford Property. Ex. D. The notice to terminate did not mention the Sanford Option Contract or the payments made by Ms. Randolph contributing to the purchase of that property.

34. After providing Ms. Randolph with a key for the new locks for the Rochester Property, Defendant Sheriff provided a notice of her intent to evict Ms. Randolph from the property. Ex. E. The notice did not mention the Rochester Option Contract or the payments made by Ms. Randolph contributing to the purchase of that property.

35. Defendant Sheriff indicated, through counsel, that the Estate will not honor the Option Contracts based on the assertion that the Option Contracts are fraudulent.

36. The Option Contracts are valid and were properly executed by Ms. Randolph and Mr. Sheriff. On November 24, 2025, Ms. Randolph, through counsel, notified Defendant Sheriff that Ms. Randolph is ready, willing, and able to perform all obligations set forth within the Option Contracts and to timely close on the Sanford and Rochester Properties. Ex. F at 1-2. Ms. Randolph requested that Defendant Sheriff accept Ms. Randolph's attempted exercise of rights under the Option Contracts.

37. At the time of filing, Defendant Sheriff has failed to provide the requested assurances that she will perform the obligations set forth in the Option Contracts.

38. The Option Contracts provide that if "any action is filed in relation to this Lease, the unsuccessful Party in the action will pay to the successful Party . . . a reasonable sum for the successful Party's attorney fees." Ex. A at ¶ 21; Ex. A at ¶ 21.

## COUNT I
## Breach of Contract (Anticipatory Repudiation)

39. Plaintiff repeats and realleges every allegation set forth above as if fully set forth herein.

40. Pursuant to the Option Contracts, Ms. Randolph has the right to exercise an option to purchase the Sanford and the Rochester Properties pursuant to the terms of the Option Contracts, with her existing rental payments contributing to the purchase prices for each property.

41. Once Ms. Randolph exercises the options, Defendant Sheriff, on behalf of the Estate, is required to provide seller disclosures and exercise due diligence to remove any exceptions to title.

42. If there are no exceptions to title or if Ms. Randolph elects to purchase the property subject to such exceptions, Defendant Sheriff must sell the Sanford and Rochester Properties to Ms. Randolph at the prices agreed upon in the Option Contracts, with credits for prior rental payments.

43. The terms of the Option Contracts are binding on Defendant Sheriff, as the personal representative of Mr. Sheriff's estate.

44. Defendant Sheriff has stated, through counsel, that she will refuse to perform the obligations under the Option Contracts based on the assertion that the Option Contracts are fraudulent.

45. The Option Contracts are valid and enforceable. By repudiating her obligations under the Option Contracts on behalf of the Estate, Defendant Sheriff committed a total breach of the Option Contracts.

46. Defendant Sheriff has the ability and power to comply with the Option Contracts but is choosing not to do so, warranting an order directing Defendant Sheriff to perform her obligations under the Option Contracts. Ms. Randolph currently resides at the Sanford Property and has a personal connection to the Rochester Property dating back to 1997. There is no other adequate remedy at law that would provide Ms. Randolph with the option to purchase the Sanford and Rochester Properties.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment holding that Defendant Sheriff breached the Option Contracts through anticipatory repudiation; compel

Defendant Sheriff to comply with the terms of the Option Contracts; order payment of attorney fees; and grant such other and further relief that the Court finds necessary and just.

## COUNT II
## Breach of Contract (Changing Locks)

47. Plaintiff repeats and realleges every allegation set forth above as if fully set forth herein.

48. Pursuant to the Rochester Option Contract, "[l]ocks may not be added or changed without the prior written agreement of both Parties, or unless the changes are made in compliance with the Act." Ex. B at ¶ 50.

49. In violation of this contract provision, Defendant Sheriff changed the locks on the Rochester Property without any prior written agreement with Ms. Randolph.

50. This breach of contract harmed Ms. Randolph by preventing her from accessing the property, including personal items stored on the Rochester Property.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment holding that Defendant Sheriff breached the Option Contracts; order payment of damages and attorney fees; and grant such other and further relief that the Court finds necessary and just.

## COUNT III
## Breach of Implied Covenant of Good Faith and Fair Dealing

51. Plaintiffs repeat and reallege every allegation set forth above as if fully set forth herein.

52. Mr. Sheriff and Ms. Randolf executed the Sanford Option Contract in September 2022 and the Rochester Option Contract in December 2022. The terms of the Option Contracts are binding on Defendant Sheriff in her capacity as personal representative for the Estate.

53. The Option Contracts provide Ms. Randolph with the option to purchase the Sanford and Rochester Properties and state that Ms. Randolph's rental payments will contribute to the purchase price of the properties. The terms of the Option Contracts thus reflect the parties' reasonable expectation that Ms. Randolph would have the opportunity to convert her possessory interest as a tenant into an ownership interest in the Sanford and Rochester Properties.

54. Defendant's conduct in repudiating the Option Contracts and sending eviction notices to Ms. Randolph prevented Ms. Randolph from receiving these benefits under the Options Contracts.

55. Defendant Sheriff's conduct in repudiating the Option Contracts and sending eviction notices to Ms. Randolph is not consistent with the parties' reasonable expectations under the Option Contracts.

56. Defendant Sheriff has taken steps to evict Ms. Randolph from her home in the Sanford Property, disrupted Ms. Randolph's management of the Rochester Property, and prevented Ms. Randolph from exercising her option to purchase both properties, thereby damaging Ms. Randolph.

57. WHEREFORE, Plaintiffs respectfully request that the Court enter judgment holding that Defendant Sheriff breached the implied covenant of good faith and fair dealing; compel Defendant Sheriff to comply with the covenant by providing the opportunity for Ms. Randolph to exercise the purchase options for the Sanford and Rochester Properties; order payment of attorney fees; and grant such other and further relief that the Court finds necessary and just.

## COUNT IV
### Declaratory Judgment

58. Plaintiff repeats and realleges every allegation set forth above as if fully set forth herein.

59. On September 20, 2022, Mr. Sheriff and Ms. Randolph executed the Sanford Option Contract providing Ms. Randolph with a leasehold interest in the property, requiring Ms. Randolph to make monthly rental payments that contributed to the purchase of the property, and providing Ms. Randolph with an option to purchase the property.

60. On December 31, 2022, Mr. Sheriff and Ms. Randolph executed the Rochester Option Contract providing Ms. Randolph with a leasehold interest in the property, requiring Ms. Randolph to make monthly rental payments that contributed to the purchase of the property, and providing Ms. Randolph with an option to purchase the property.

61. After executing the Option Contracts with Mr. Sheriff, Ms. Randolph paid rent for both properties for years, thereby contributing toward the purchase price for each property.

62. There is a real and substantial controversy regarding the validity and enforceability of the Option Contracts. Ms. Randolph wishes to exercise the purchase options provided in the Option Contracts but is prevented from doing so by Defendant Sheriff's actions on behalf of the Estate in refusing to acknowledge the validity and enforceability of the contracts.

WHEREFORE, pursuant to 28 U.S.C. § 2201, Plaintiff respectfully requests that the Court enter judgment against Defendant Sheriff, in her capacity as personal representative of the Estate, declaring that the Option Contracts are valid and enforceable; ordering payment of attorney fees; and granting such other and further relief that the Court finds necessary and just.

## COUNT V
## Unjust Enrichment

63. Plaintiffs repeat and reallege every allegation set forth above as if fully set forth herein.

64. In the alternative, Ms. Randolph has conferred a benefit on the Estate by paying Mr. Sheriff rental payments and additional mortgage and other payments on the Sanford and Rochester Properties.

65. Each of Ms. Randolph's payments contributed to paying Dr. Randolph's mortgage debt for the Sanford and Rochester Properties, thereby benefiting Mr. Sheriff and his Estate by reducing the debt load for the Sanford Property and eliminating the mortgage for the Rochester Property.

66. Ms. Randolph also paid property taxes on the Sanford and Rochester Properties, thereby benefiting Mr. Sheriff and his Estate in the amount of the taxes paid.

67. Mr. Sheriff knew of and appreciated the benefits conferred by the payments by Ms. Randolph contributing to mortgage payments and property taxes. Not only did Mr. Sheriff execute the Option Contracts but months later, he authorized Ms. Randolph to manage the Rochester Property on his behalf. *See* Ex. C.

68. Mr. Sheriff retained the benefits of Ms. Randolph's payments towards the debt service and property tax obligations for the Sanford and Rochester Properties. Under such circumstances, it would be inequitable for Mr. Sheriff's Estate, through Defendant Sheriff, to retain these benefits without payment of their value.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendant Sheriff for unjust enrichment and award Ms. Randolph damages for the debt service funds and tax payments retained by Defendant Sheriff on behalf of the Estate, together with all costs and interest incurred, and any other and further relief that the Court finds necessary and just.

Dated at Portland, Maine this 5th day of December, 2025.

_/s/ James G. Monteleone_
James G. Monteleone

Attorney for Plaintiff
Selena Randolph

BERNSTEIN SHUR
100 Middle Street
P.O. Box 9729
Portland, Maine 04014
207-774-1200
jmonteleone@bernsteinshur.com
