UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| SELENA RANDOLPH, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 2:25-cv-00610-JCN |
| | ) | |
| ARLENE H. SHERIFF, | ) | |
| | ) | |
| Defendant | ) | |

## ORDER ON MOTION TO DISMISS COUNTERCLAIM

Plaintiff Selena Randolph filed this action against Defendant Arlene H. Sheriff, as personal representative of the Estate of Andrew Sheriff, seeking damages for the alleged breach of two option contracts, a declaratory judgment that the option contracts are valid and enforceable, and other related relief. (Complaint, ECF No. 1.) As part of her response to the complaint, Defendant asserted an eight-count counterclaim. Defendant subsequently filed an amended counterclaim. (Amended Counterclaim, ECF No. 16.) Citing Federal Rule of Civil Procedure 12(b)(6), Plaintiff moves to dismiss all counts of the amended counterclaim. (Motion, ECF No. 34.) Defendant opposes the motion. (Def's Obj., ECF No. 35.)

After a review of the pleadings and after consideration of the parties' arguments, the Court grants the motion as to two claims but otherwise denies the motion.

### LEGAL STANDARD

"As with all claims for relief," a counterclaim "must state a claim upon which relief can be granted or it will be subject to dismissal under Rule 12(b)(6)." Wright & Miller,

Federal Practice & Procedure, 6 Fed. Prac. & Proc. Civ. § 1407 (3d ed. 2026). "To survive a motion to dismiss," a counterclaim "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted.)

"To implement the plausibility standard, an inquiring court must separate wheat from chaff; that is, the court must separate the [counterclaim's] factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012). In this assessment, the court draws all reasonable inferences from the well-pleaded facts in the pleader's favor. *A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013).

Where the well-pleaded facts permit a reasonable inference of liability, a claim has facial plausibility. *Iqbal*, 556 U.S. at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a claim falls short of the line separating conceivability from plausibility. *Id.* at 679. "If the factual allegations in the [counterclaim] are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the [counterclaim] is open to dismissal." *Morales-Cruz*, 676 F.3d at 224 (quotation marks omitted).

"To pass through the plausibility screen," a pleading ordinarily need not "evince a one-to-one relationship between any single allegation and a necessary element of the cause of action." *A.G. ex rel. Maddox*, 732 F.3d at 82 (quotation marks omitted). Instead, "the plausibility standard should [generally] be applied to the claim as a whole." *Id.* "The critical question is whether the claim, viewed holistically, is made plausible by the

cumulative effect of the factual allegations" set forth in the pleading. *Id.* (quotation marks omitted).

## BACKGROUND[1]

Defendant was married to Andrew Sheriff (Sheriff). After Sheriff's death on September 21, 2025, Defendant was appointed executrix of Sheriff's estate.

At the time of his death, Sheriff owned property in Sanford, Maine (the Sanford Property) and in Rochester, New Hampshire (the Rochester Property). Sheriff was a chiropractor with an office in Portsmouth, New Hampshire. Plaintiff worked in the chiropractic office, performing administrative work, paying office bills, and managing patient accounts. In connection with her employment, Plaintiff had access to Sheriff's email, passwords, and financial accounts.

At some point, no later than 2023, Plaintiff began to use and became a tenant in the Sanford Property and the Rochester Property. Plaintiff claims to reside at the Sanford Property. She also claims to have a right to possess the Rochester Property, but she has not maintained that property: an inspection of the Rochester Property last winter revealed that the pipes were nearly frozen. Plaintiff has not paid the costs associated with her use of the Sanford Property and the Rochester Property, including rent, the cost of utilities, and the cost to repair damage she caused.

Between 2021 and 2025, Plaintiff obtained at least 30 different credit cards, lines of credit, or other loans in Sheriff's name, or in the name of his business, and used the

[1] The following facts are derived from the amended counterclaim and accepted as true in the assessment of whether Defendant has alleged sufficient facts to support the asserted claims.

accounts to pay for personal and family expenses, without Sheriff's authorization. The accounts included an American Express Platinum card that was opened on May 14, 2023, while Sheriff was hospitalized and incapacitated following a heart attack. Sheriff's personal and business funds were used to make payments on the loans, lines of credit, and credit cards, without Sheriff's permission.

According to Defendant, the accounts wrongfully established by Plaintiff have resulted in third parties' asserting claims against Sheriff's estate including: (1) $8,060.96 for a Discover Credit Card; (2) $3,660.99 for a Capital One Credit Card; (3) $8,835.81 for an M & T Bank Credit Card; and (4) $5,891.07 for a T.D. Bank account. American Express has also asserted a claim against the estate arising from charges on an account that Plaintiff opened in Sheriff's name using her email address and phone number and an IP address associated with her home.

In the days leading up to his death on September 21, 2025, Sheriff was incapacitated following a heart attack. Defendant alleges that between September 15 and September 24, 2025, Plaintiff initiated unauthorized transfers from Sheriff's bank accounts totaling $143,148.61, consisting of: (1) $118,175.61 transferred from Citizens Bank to AmeriSave Mortgage, the holder of a mortgage on the Rochester property and (2) $24,973.00 transferred from M&T Bank to AmeriSave Mortgage. Subsequently, Citizens Bank fraud investigators and AmeriSave Mortgage jointly determined that the transfer from Citizens Bank was unauthorized, resulting in return of the funds to the originating account.

In her amended counterclaim, Defendant asserts the following claims: breach of fiduciary duty, embezzlement and theft, conversion, breach of contract, quantum meruit, unjust enrichment/restitution, fraud, and negligent misrepresentation.

## Discussion

A preliminary issue for the Court is whether Maine or New Hampshire substantive law applies. "A federal court sitting in a diversity case must apply the choice of law rules of the forum state." *Allstate Ins. Co. v. Occidental Int'l, Inc.*, 140 F.3d 1, 3 (1st Cir. 1998). The Maine Supreme Judicial Court generally follows the Restatement (Second) of Conflict of Laws in determining choice of law issues. *Burr v. Melville Corp.*, 868 F. Supp. 359, 363 (D. Me. 1994). The amended counterclaim includes claims that sound in tort and contract, requiring two choice-of-law analyses.

Under Maine law, the "most significant contacts and relationships" test of the Restatement (Second) of Conflict of Laws §§ 145-146 (1971) determines choice of law on a tort-based claim. *Kenerson v. Stevenson*, 621 F. Supp. 1179, 1180 (D. Me. 1985). Contacts to be considered in determining the applicable law include: the place where the conduct causing the alleged injury occurred, the residence and place of business of the parties, and the place where the relationship between the parties was centered. Restatement (Second) of Conflict of Laws § 145(2).

While there are some contacts in Maine due to the Sanford property and Plaintiff's alleged residency in Maine, the most significant contacts are primarily with the state of New Hampshire. The Rochester Property is in New Hampshire, the business with which Plaintiff was employed is in New Hampshire, Plaintiff's alleged wrongful conduct was in

connection with a New Hampshire business, and Defendant resides in and Sheriff's estate is being probated in New Hampshire. Consistent with this assessment, both parties reference the law of New Hampshire in their written arguments. Given the preponderance of contacts with New Hampshire law and the parties' agreement that New Hampshire law should apply, the Court will apply New Hampshire law to the tort-based claims.

The Court will also apply New Hampshire law to the contract-based claims. The Restatement (Second) of Conflicts § 188(1) requires the Court, in evaluating choice of law on a contract-based claim in the absence of an effective choice of law by the parties, "to determine what state has the 'most significant relationship' to the transaction and the parties." *Burr*, 868 F. Supp. at 363 (citing Restatement (Second) of Conflicts § 188(1) (1971)). In this analysis, pertinent contacts include where the subject matter of the contract is located and the residence and place of business of the parties. *Id.* (citing Restatement (Second) of Conflicts § 188(2)). In this case, the subject matter of the alleged contracts includes the Sanford Property in Maine, the Rochester Property in New Hampshire, and the employment relationship based in New Hampshire. Maine arguably has a significant relationship to the contract related to the Sanford Property, and the alleged option contract regarding that property attached to the complaint states that Maine law should govern its construction. The parties, however, have identified no meaningful distinction between Maine contract law and New Hampshire contract law, and have relied on New Hampshire law in their arguments regarding the contract-based claims. Given the parties' apparent agreement that New Hampshire law governs, it is appropriate to assess the contract-based claims under New Hampshire law. *See Melendez v. Target Stores, Inc.*, No. 2:25-cv-

00597-LEW, 2026 WL 3320766, at *2 n.1 (D. Me. Nov. 3, 2026) (forgoing independent choice of law analysis given the parties' apparent agreement regarding the applicable law).

**A. Breach of Fiduciary Duty (Count I)**

In Count I of the amended counterclaim, Defendant alleges that Plaintiff owed Sheriff a fiduciary duty in her role as an administrator in the chiropractic business, which role included access to and the use of Sheriff's financial accounts. Defendant alleges that Plaintiff breached that duty when she used funds in the accounts for her personal benefit. Plaintiff contends that her subordinate role as an office administrator did not give rise to a fiduciary relationship.

"Under New Hampshire law, a fiduciary relationship will be found to exist whenever 'one has gained the confidence of the other and purports to act or advise with the other's interest in mind.'" *Data Intensity LLC v. Spero*, No. 21-cv-781-PB, 2024 WL 1256253, at *21 (D.N.H. Mar. 25, 2024) (quoting *Clark & Lavey Benefits, Inc. v. Educ. Dev. Ctr., Inc.*, 949 A.2d 133, 139 (N.H. 2008)).

> A fiduciary relation does not depend upon some technical relation created by, or defined, in law. It may exist under a variety of circumstances, and does exist in cases where there has been a special confidence reposed in one who, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing the confidence.

*Lash v. Cheshire Cnty. Sav. Bank, Inc.*, 474 A.2d 980, 982 (N.H. 1984) (quotation marks omitted). Under this standard, an employee owes a fiduciary duty of loyalty to her employer when she holds "a position of trust and confidence, such as a supervisor, manager, director, or officer[.]" *White v. Ransmeier & Spellman*, 950 F. Supp. 39, 43 (D.N.H. 1996) (quotation marks omitted). Where it exists, the duty "demands that the

employee act solely for the benefit of the employer, never to the employer's detriment." *Id.* (quotation marks omitted). Conduct that would violate that duty would include misuse of confidential information entrusted to the employee because of her employment. *Id.*

Defendant's allegations that Plaintiff was authorized to access Sheriff's accounts and was responsible for paying the bills of the office would support a finding that Plaintiff maintained a position of trust and confidence even though she did not have a formal managerial title. *See Broadus v. Infor, Inc.*, No. 18-cv-1079-JD, 2019 WL 1992953, at *3 (D.N.H. May 6, 2019) (concluding that counterclaim for breach of loyalty was plausible where it included allegations that a non-managerial employee misappropriated confidential material entrusted to her because of her employment position); *see also Clark & Lavey Benefits, Inc.*, 949 A.2d at 139 (indicating that, in New Hampshire, fiduciary relationship is "defined comprehensively" and that such a relationships exists wherever "confidence has been reposed and betrayed"). As such, Defendant has alleged an actionable claim for breach of fiduciary duty.

**B. Embezzlement & Theft (Count II)**

In Count II of the amended counterclaim, Defendant claims that Plaintiff committed embezzlement and theft by taking money from Sheriff's bank accounts and by obtaining loans in Sheriff's name and using the loan proceeds to pay for personal and family expenses. While theft is a crime under New Hampshire statute (defined to include conduct previously known as common law embezzlement), N.H. Rev. Stat. § 637.3(II), neither the statute nor common law provides for a civil claim for theft.

New Hampshire law does, however, provide a civil cause of action for embezzling from the estate of a deceased person. N.H. Rev. Stat. § 553:17. The factual allegations in the counterclaim permit a reasonable inference that Plaintiff, by initiating the transfers from Citizens Bank and M&T Bank in the days following Sheriff's death, may be liable under § 553:17. At this stage of the proceeding, Plaintiff is not entitled to dismissal of the embezzlement claim asserted in Count II.

**C. Conversion (Count III)**

In Count III of the amended counterclaim, Defendant alleges a conversion claim. Plaintiff contends that Defendant's allegations lack sufficient, non-speculative factual detail. Plaintiff argues that Defendant has not identified money or property that Plaintiff allegedly converted. Plaintiff further contends that Defendant has not alleged facts to support a finding that Plaintiff was not entitled to the property given that Plaintiff had lawful access to the property in connection with her employment.

Plaintiff's arguments are unpersuasive. "'An action for conversion is based on the defendant's exercise of dominion or control over goods which is inconsistent with the rights of the person entitled to immediate possession.'" *Marcucci v. Hardy*, 65 F.3d 986, 991 (1st Cir. 1995) (quoting *Rinden v. Hicks*, 408 A.2d 417, 418 (N.H. 1979)). "The right to possession is a key element, which the claimant must establish" at trial. *Id.* (citations omitted). Defendant has adequately described multiple accounts in Sheriff's name from which Plaintiff took funds for uses that were inconsistent with Sheriff's right to possession of the accounts and funds.

**D. Breach of Contract (Count IV)**

In Count IV of the amended counterclaim, Defendant alleges that Sheriff "had agreements with [Ms.] Randolph regarding tenancy and working at his office" and that Plaintiff breached these agreements. (Amended Counterclaim ¶ 45.) Plaintiff contends that Defendant has not alleged enough facts to establish the existence of a contract. She argues that although the counterclaim "alleges a landlord-tenant relationship and an employer-employee relationship it does not allege a contractual relationship in either case." (Motion at 8.) Defendant contends that Plaintiff's use of the Sanford Property and the Rochester Property establishes a contractual landlord-tenant relationship. Defendant further asserts that the contractual employment relationship between Sheriff and Plaintiff "did not include allowing [Ms.] Randolph to open up credit cards and lines of credit in [Mr.] Sheriff's name and then charge goods and services for [Ms.] Randolph and her family[.]" (Def's Obj. at 9.)

"A successful breach of contract claim under New Hampshire law requires the [claimant] to show: (1) that it had a valid, binding contract with the [respondent] and (2) that the [respondent] breached the terms of the contract." *Doe v. Trs. of Dartmouth Coll.*, 731 F. Supp. 3d 222, 241 (D. N.H. 2024). "A breach of contract occurs when there is a failure without legal excuse to perform any promise which forms the whole or part of a contract." *Audette v. Cummings*, 82 A.3d 1269, 1273 (N.H. 2013) (quotation marks omitted).

Contrary to Plaintiff's arguments, Defendant's allegations regarding Plaintiff's tenancies with the properties and Plaintiff's employment with Sheriff are sufficient to

support the finding that one or more contracts existed between Plaintiff and Sheriff. Further, the allegations regarding Plaintiff's unauthorized use of funds and her failure to pay sums due in connection with her use of the properties would support a finding that Plaintiff breached the agreements. *See generally Centronics Corp. v. Genicom Corp.*, 562 A.2d 187, 190-91 (N.H. 1989) (discussing implied obligation of good faith contractual performance recognized by New Hampshire common law); *Kane v. N.H. State Liquor Comm'n*, 393 A.2d 555, 557 (N.H. 1978) ("A lease is a contract and gives rise to both express and implied covenants. Failure to satisfy either will give rise to a breach of contract.") (citation omitted).

**E. Quantum Meruit (Count V)**

In Count V of the amended counterclaim, Defendant asserts that Plaintiff breached one or more unspecified implied contracts with Sheriff, and seeks recovery in quantum meruit. Defendant asserts that "if there was an agreement" between Sheriff and Plaintiff with indefinite terms "then those terms were agreed upon pursuant to an implied contract and meeting of the minds" between Sheriff and Ms. Randolph. (Counterclaim ¶ 48.)

"Quantum meruit is a restitutionary remedy intended for use by contracting parties who are in material breach and thus unable to sue 'on contract.'" *R. J. Berke & Co. v. J. P. Griffin, Inc.*, 367 A.2d 583, 586 (N.H. 1976). Damages in quantum meruit "are based on the value of the services provided" by the party seeking recovery. *Gen. Insulation Co. v. Eckman Const.*, 992 A.2d 613, 621 (N.H. 2010) (quotation marks omitted). "A valid claim in quantum meruit requires that: (1) services were rendered to the [respondent] by the [claimant]; (2) with the knowledge and consent of the [respondent]; and (3) under

circumstances that make it reasonable for the [claimant] to expect payment." *Id.* (quotation marks omitted).

Here, Defendant has not alleged that Sheriff or the estate rendered services to Plaintiff for which Defendant was not compensated. Defendant, therefore, has not alleged an actionable claim in quantum meruit. *See id.* (dismissing claim for quantum meruit recovery where petitioner alleged that respondents did not pay for materials supplied).

**F. Unjust Enrichment/Restitution (Count VI)**

In Count VI of the amended counterclaim, Defendant seeks to recover for unjust enrichment. To state a claim for unjust enrichment, a claimant "must sufficiently allege that the [respondent] was enriched at the [claimant's] expense through either (1) wrongful acts; or (2) passive acceptance of a benefit that would be unconscionable to retain." *McLaughlin v. McLaughlin*, No. 2024-0254, 2025 WL 2837966, at *4 (N.H. Oct. 7, 2025).

Unjust enrichment "'generally does not form an independent basis for a cause of action.'" *Estes v. ECMC Grp., Inc.*, 565 F. Supp. 3d 289, 306 (D. N.H. 2020) (quoting *Gen. Insulation Co.*, 992 A.2d at 621). Like quantum meruit, unjust enrichment is a quasi-contract claim that may be pled in the alternative to a contract claim where the parties dispute whether there was a contractual relationship. *See id.* at 305 n.14. "Unjust enrichment is an equitable remedy that is available when an individual receives a benefit which would be unconscionable for [her] to retain." *Axenics, Inc. v. Turner Constr. Co.*, 62 A.3d 754, 764 (N.H. 2013) (quotation marks omitted). A court "cannot allow recovery under a theory of unjust enrichment when there is a valid, express contract covering the subject matter at hand." *Id.* That said, "unjust enrichment may be available to contracting

parties if the benefit received is outside the scope of the contract." *Id.* "Damages for unjust enrichment are measured by the value of what was inequitably retained[.]" *Estes*, 565 F. Supp. 3d at 306.

In this case, although Defendant has alleged a breach of contract claim, Defendant has also alleged that Plaintiff obtained benefits to which she was not entitled under the terms of the alleged contracts. Defendant, therefore, has alleged sufficient facts to support an unjust enrichment claim.

**G. Fraud (Count VII) & Negligent Misrepresentation (Count VIII)**

In Counts VII and VIII of the amended counterclaim, Defendant asserts claims for fraud and negligent misrepresentation, alleging that Plaintiff made false representations to Sheriff "by failing to disclose when she had a duty to disclose," that Plaintiff was obtaining loans in Sheriff's name and using the loan proceeds and other funds of Sheriff's business for her own benefit, and that Sheriff relied on the representations to his detriment. (Amended Counterclaim ¶¶ 53-54.) Defendant further alleges that the failure to disclose caused Sheriff to continue Plaintiff's employment when he would have terminated the employment. (*Id.* ¶ 60.) Plaintiff argues that the allegations do not satisfy the heightened pleading standard applicable to allegations of fraud and misrepresentation under Federal Rule of Civil Procedure 9(b).

To state a claim for fraud, a claimant must allege facts showing that the respondent "made a representation with knowledge of its falsity or with conscious indifference to its truth with the intention to cause another to rely upon it." *Snierson v. Scruton*, 761 A.2d 1046, 1049 (N.H. 2000). "In addition, a [claimant] must demonstrate justifiable reliance."

*Id.* The elements of a negligent misrepresentation claim similarly include a negligent misrepresentation by the respondent of a material fact and justifiable reliance by another. *Ingaharro v. Blanchette*, 440 A.2d 445, 447 (N.H. 1982). "In New Hampshire, as elsewhere, liability for fraudulent concealment does not arise in the absence of a duty of disclosure." *Invest Almaz v. Temple-Inland Forest Prods. Corp.*, 243 F.3d 57, 76 (1st Cir. 2001). The Court assumes in the assessment of the motion to dismiss that New Hampshire courts would take the same view as to negligent misrepresentation by nondisclosure – i.e., that liability for such nondisclosure exists only where there is a duty of disclosure. *See* Restatement (Second) of Torts § 551(1) ("One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question."); *see also Snierson*, 761 A.2d at 1051 (recognizing that New Hampshire common law imposes a duty to disclose latent defects in a real estate transaction).

"'To withstand a motion to dismiss, the [claimant] must 'specify the essential details of the fraud, and specifically allege the facts of the [respondent's] fraudulent actions. It is not sufficient for the [claimant] merely to allege fraud in general terms.'" *Alexander v. Fujitsu Bus. Commc'n Sys., Inc.*, 818 F. Supp. 462, 467 (D. N.H. 1993) (quoting *Jay Edwards, Inc. v. Baker*, 534 A.2d 706, 709 (N.H. 1987)). This specificity is required by Rule 9(b) for claims sounding in fraud, including a claim of negligent misrepresentation. *PC Connection, Inc. v. Int'l Bus. Machs. Corp.*, 687 F. Supp. 3d 227, 258 (D. N.H. 2023).

The "heightened pleading standard" set by Rule 9(b) requires the claimant to allege "the who, what, where, and when" of the purported fraudulent omissions "as well as a reasonable basis for inferring scienter." *Id.* (quotation marks omitted). The "First Circuit Court of Appeals prescribes a holistic approach when assessing whether the Rule 9(b) standard is satisfied." *Id.* at 259. When a fraud-based claim contains "a hybrid of allegations" some of which satisfy Rule 9(b) and some of which do not, the court "'may sustain the claim on the basis of those specific allegations that are properly pleaded.'" *Id.* (quoting *Rodi v. S. New Eng. Sch. of Law*, 389 F.3d 5, 15-16 (1st Cir. 2004)).

The amended counterclaim, when read in its entirety, satisfies the heightened pleading standard. Defendant has identified thirty separate credit cards, loans, or lines of credit that Plaintiff allegedly opened in Sheriff's name and used for her personal and family expenses, without Sheriff's permission, between 2021 and 2025. The allegations sufficiently identify the who (Plaintiff), what (failure to disclose unauthorized use of Sheriff's identity and financial resources for Plaintiff's benefit and at least implicitly representing that she was using the business's resources only for business purposes), and when (between 2021 and 2025). The alleged misappropriation of Sheriff's identity and resources occurred in the context of an employment relationship in which Plaintiff occupied a position of trust. Plaintiff thus has plausibly alleged nondisclosure under circumstances that give rise to a duty to disclose. *See* Restatement (Second) of Torts § 551(2)(a) ("One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated (a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and

confidence between them[.]"); *see also Halperin v. Halperin*, 750 F.3d 668, 672 (7th Cir. 2014) ("A [fiduciary's] failure to comply with [the duty to inform the beneficiary of facts material to the fiduciary relationship] that prevents the beneficiary from learning something the fiduciary is duty-bound to communicate to him (such as that the fiduciary is stealing from him!) is concealment, and is fraudulent because it is taking advantage of the beneficiary's dependence on the fiduciary.").

## CONCLUSION

Following a review of the allegations in the amended counterclaim and after consideration of the parties' arguments, for the reasons explained above, the Court grants Plaintiff's motion to dismiss Count V (Quantum meruit) of the amended counterclaim and the theft claim asserted in Count II. The Court otherwise denies the motion.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 20th day of November, 2026.